IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMS STAFF LEASING, NA, LTD., | § | |
| | § | |
| Plaintiff-counterdefendant, | § | |
| | § | |
| VS. | § | |
| | § | |
| ASSOCIATED CONTRACT | § | |
| TRUCKMEN, INC., et al., | § | |
| | § | |
| Defendants- | § | Civil Action No. 3:04-CV-1344-D |
| counterplaintiffs- | § | |
| third-party plaintiffs, | § | |
| | § | |
| VS. | § | |
| | § | |
| PACESETTER NATIONAL | § | |
| CORPORATION d/b/a PACESETTER | § | |
| ADJUSTMENT COMPANY, | § | |
| | § | |
| Third-party defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action by plaintiff AMS Staff Leasing, NA ("AMS") against defendants Associated Contract Truckmen, Inc. ("ACT") and its President, Dave Brandert ("Brandert"), AMS moves for summary judgment and defendants move to continue consideration of the motion. Defendants also object to an order of the magistrate judge denying their motion to reconsider an order denying their motion to withdraw deemed admissions, and they move for leave to amend their pleadings. For the reasons that follow, the court overrules defendants' objections and affirms the magistrate judge's order, denies defendants' motions to continue and for additional time to respond to AMS's summary judgment

motion, denies without prejudice their motion for leave to amend their pleadings, and grants in part and denies in part AMS's motion for summary judgment.

I

AMS sues ACT and Brandert to recover on claims for breach of contract, fraud and fraudulent inducement,[1] and negligent misrepresentation.[2] It alleges that ACT and Brandert fraudulently schemed to manufacture and sell non-existent workers' compensation insurance by falsely representing that an insurance policy issued by National Fire Insurance Company of Hartford ("National Fire"),

---

[1]In its first amended complaint, AMS labels this as a single claim for "fraud and fraudulent inducement." In the summary judgment briefing, however, AMS addresses it as two separate claims: one for fraud and the other for fraudulent inducement. The court therefore treats it as two claims in its discussion *infra* at § IV(C) and (D).

[2]AMS also alleged in its first amended complaint that it is entitled to recover under the Texas Theft Liability Act. In its summary judgment brief, however, it states that it "voluntarily nonsuits this claim." P. Summ. J. Br. 1 n.1. The court interprets this statement to be a motion for voluntary dismissal under Fed. R. Civ. P. 41(a)(2). *See EEOC v. Fenyves & Nerenberg, M.D. P.A.*, 1999 WL 134279, at *1 n.2 (N.D. Tex. Mar. 9, 1999) (Fitzwater, J.) (noting that term "non-suit" is found in Tex. R. Civ. P. 162 but is not used in federal procedure). Defendants do not explicitly oppose dismissal of this claim in their opposition to AMS's motion, and the court grants the motion under Rule 41(a)(2) and dismisses the claim without prejudice.
Additionally, AMS asserts counts for attorney's fees and injunctive relief, which are remedies rather than causes of action. *See United States v. Smelser*, 87 F.2d 799, 800-01 (5th Cir. 1937) ("Causes of action should be distinguished from remedies. One precedes and gives rise to the other, but they are separate and distinct. The cause of action is not only different from the remedy but also from the relief sought."). The court need not separately address these counts.

a wholly-owned subsidiary of Continental Casualty Company ("CNA"), had been issued directly to ACT (when it had in fact been issued to AMS) and that ACT had authority to provide individual long-haul truck drivers with such insurance.  AMS also avers that defendants issued false certificates of insurance ("COIs") that purported to provide such insurance.  It maintains that individuals have made workers' compensation claims for injuries and are reporting that they are covered by the CNA policy, thus subjecting AMS to liability to CNA and to individuals whom defendants told had insurance coverage under the policy, and that state departments of insurance are taking action against AMS on the mistaken belief that it was doing business as an employer who lacked workers' compensation insurance.

Defendants counterclaim for breach of contract and fraud, maintaining that AMS fraudulently represented that ACT and the individual sole proprietor truckers were co-insureds under the policy and failed to give defendants 60 days' written notice of the policy's cancellation.[3]  They also bring a third-party action against Pacesetter National Corporation d/b/a Pacesetter Adjustment Company for negligence and contribution and indemnity.

In December 2000 AMS and ACT entered into a staff leasing

---

[3]Defendants allege a count for exemplary damages, which is properly treated as a remedy rather than a cause of action and need not be considered.  *See supra* note 2.

agreement, which was renewed in December 2001,[4] under which, *inter alia*, ACT's independent truckers obtained workers' compensation coverage through AMS.[5]   AMS provided the coverage through its policy with CNA.   Each trucker required a workers' compensation insurance certificate before operating his vehicle.   AMS's soliciting insurance agent, Hanafin Bates, and ACT issued the COIs. ACT lacked authority to issue the COIs, and the COIs falsely stated that ACT was a named insured on the CNA policy.   Each month, ACT sent AMS lists of the truckers who were participating in the workers' compensation coverage, AMS adjusted truckers' claims, and AMS received premiums.   The Agreements were terminated on May 31, 2002 for nonpayment by ACT.   ACT and Brandert continued to collect premiums in June and July 2002 from long-haul truckers for workers' compensation coverage under the CNA policy.

AMS later filed this lawsuit, and it now moves for summary judgment.

II

Defendants failed to respond to ACT's requests for admissions under Fed. R. Civ. P. 36, and the requests were deemed admitted by

---

[4]As do the parties, the court will refer to the two staff leasing agreements of 2000 and 2001 collectively as the "Agreements."

[5]Except to the extent that defendants are bound by a deemed admission, *see infra* § II, the court recounts the evidence in a light favorable to defendants as the summary judgment nonmovants and draws all reasonable inferences in their favor. *See, e.g., Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000).

operation of Rule 36(a).  They later moved to withdraw the deemed admissions, and the magistrate judge denied the motion.  Defendants did not appeal the decision.  Instead, they later filed a motion for reconsideration, which the magistrate judge denied.  Defendants object to that order.  Because the court's decision concerning defendants' objections to the magistrate judge's order affects its disposition of their motion to continue consideration of AMS's summary judgment motion, the court turns first to the objections.[6]

_____

[6]Defendants also object to the magistrate judge's other order of June 30, 2005 denying their motion to compel and for sanctions under Rule 37.  Defendants' objection, in its entirety, is as follows:

> The motion to compel found predicate in the Magistrate's decision to sanction a party (ACT and Brandert) for failing to timely make full disclosures, under FRCP 26.  The same reasoning should apply to a party (AMS) that timely makes partial disclosures.  The untimely omitted disclosures should suffer the same fate regardless of whether it is a complete or partial omission.  FRCP 26(g)(1) provides that counsel's signing of the disclosure response is a certification that the disclosure is "complete and correct" when made.  Moreover, a failure—without substantial justification—to make a complete disclosure as certified by counsel's signature, dictates that sanctions be imposed on the party making a partial disclosure.  FRCP 26(g)(3).
> If the facts surrounding ACT and Brandert's failure to make timely disclosures fall[ ] within "without a substantial justification", then so does AMS's failure to make full disclosures.  To find and recommend otherwise is clearly erroneous and contrary to law, and warrants a reversal of the Magistrate's recommendation/order.

A

The purpose of Rule 36 admissions is to narrow the array of issues before the court and thus expedite both the discovery process and resolution of the litigation. *See In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001) (noting that breadth of what may be admitted under Rule 36 "allows litigants to winnow down issues prior to trial and thus focus their energy and resources on disputed matters"). Defendants concede that they failed to file timely answers or objections to AMS's first request for admissions, responding instead 53 days after the deadline. Because they did not timely answer or object, all the matters included in the requests were deemed admitted under Rule 36(a).[7]

Defendants later moved under Rule 36(b) to withdraw or amend

Ds. Written Objections at v-vi.

Defendants have failed to demonstrate that they are entitled to relief. Objections "'must be clear enough to enable the district court to discern those issues that are dispositive and contentious[.']" *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1421 n.6 (5th Cir. 1996) (quoting *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)). Defendants' objection is at best a general complaint that the magistrate judge's decision is erroneous. Because defendants fail to object in a discernible manner to specific legal or factual errors in the magistrate judge's order, the order denying defendants' motion to compel and for sanctions is affirmed. *Id.* ("'[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed.'") (quoting *Miller*, 50 F.3d at 380).

[7]Rule 36(a): The matter is admitted unless . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter.

- 6 -

the deemed admissions, and the court referred the motion to the magistrate judge, who denied it.[8] Defendants did not object to the order. Instead, several months later they moved the court to reconsider the order. The court referred the motion to the magistrate judge, who denied it. He concluded that defendants had failed to offer any evidence or law that was not available when their motion was denied initially or to cite manifest errors of law or fact that required correction. The magistrate judge reasoned that "withdrawal of the admissions would place AMS in the untenable position of relying on the Defendants to provide discovery that [AMS] would need to prove its prima-facie case at trial." June 30, 2005 Order at 1. Defendants object to the order denying reconsideration, but they limit their objection to the second and third grounds of the magistrate judge's order (i.e., they do not contend they offered any evidence or law that was not available

_____

[8]Rule 36(b) provides, in relevant part:

> the court may permit withdrawal or amendment
> when the presentation of the merits of the
> action will be subserved thereby and the party
> who obtained the admission fails to satisfy
> the court that withdrawal or amendment will
> prejudice that party in maintaining the action
> or defense on the merits.

To allow withdrawal of a deemed admission, Rule 36(b) requires that the court find that withdrawal or amendment "(1) would serve the presentation of the case on its merits, but (2) would not prejudice the party that obtained the admissions in its presentation of the case." *Carney*, 258 F.3d at 419. "Even when these two factors are established, a district court still has discretion to deny a request for leave to withdraw or amend an admission." *Id.*

- 7 -

when the original ruling was made).

B

The standard of review for a decision of a magistrate judge in a nondispositive matter is governed by Rule 72(a), which provides that the court "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." *Lahr v. Fulbright & Jaworski, L.L.P.*, 164 F.R.D. 204, 208 (N.D. Tex. 1996) (Fitzwater, J.).  "'The "clearly erroneous" standard applies to the factual components of the magistrate judge's decision.'"  *Id.* (quoting *Smith v. Smith*, 154 F.R.D. 661, 665 (N.D. Tex. 1994) (Fitzwater, J.)).  "'The district court may not disturb a factual finding of the magistrate judge unless, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed.'"  *Id.* (quoting *Smith*, 154 F.R.D. at 665) (internal quotation marks omitted).  "'If a magistrate judge's account of the evidence is plausible in light of the record viewed in its entirety, a district judge may not reverse it.'"  *Id.* (quoting *Smith*, 154 F.R.D. at 665) (internal quotation marks omitted).  The legal conclusions of the magistrate judge are reviewed *de novo*, and the district judge "reverses if the magistrate judge erred in some respect in [his] legal conclusions."  *Id.*  "[T]he abuse of discretion standard governs review of 'that vast area of . . . choice that remains to the [magistrate judge] who has properly

- 8 -

applied the law to fact findings that are not clearly erroneous.'" *Id.* (quoting *Smith*, 154 F.R.D. at 665) (alteration in original).

Motions for reconsideration have a narrow purpose and are only appropriate to "allow a party to correct manifest errors of law or fact or to present newly discovered evidence." *Wolf Designs, Inc. v. Donald McEvoy Ltd.*, 2005 WL 827076, at *1 (N.D. Tex. Apr. 6, 2005) (Fish, C.J.) (internal quotation marks omitted). A motion to reconsider may sometimes "also be granted if granting the motion is necessary to prevent manifest injustice." *Nat'l Athletic Trainers' Ass'n v. U.S. Dep't of Health & Human Servs.*, 2005 WL 2648402, at *14 (N.D. Tex. July 21, 2005) (Fish, C.J.) (addressing Rule 59(e) motion). Such motions are not "the proper vehicle for rehashing old arguments or advancing theories of the case that could have been presented earlier. A motion for reconsideration based on recycled arguments serves only to waste the court's resources." *Wolf Designs*, 2005 WL 827076, at *1 (internal quotation marks omitted).

C

The court must decide whether the magistrate judge's conclusions that defendants failed to cite manifest errors of law or fact that required correction, and that "withdrawal of the admissions would place AMS in the untenable position of relying on the Defendants to provide discovery that [AMS] would need to prove its prima-facie case at trial," are clearly erroneous or contrary

to law.

Initially, the court observes that, several times in their briefing, defendants conflate the standard by which the court reviews a nondispositive magistrate judge order with considerations that may be relevant to whether the motion to reconsider should have been granted in the first instance.  For example, defendants maintain that, because several of the deemed admissions are factually incorrect, the magistrate judge committed manifest errors of fact in failing to grant reconsideration and allow the admissions to be withdrawn.  This contention overlooks that the court applies the clearly erroneous standard of review *to the magistrate judge's findings of fact.*  *See, e.g., Lahr*, 164 F.R.D. at 208.  It does not directly assess whether the admissions that defendants seek to withdraw contain manifest factual errors.  While the existence *vel non* of manifest factual errors may inform the court's decision as to whether the magistrate judge clearly erred in his factual findings, the court directly reviews those findings, not the factual accuracy of the deemed admissions.  Because defendants have failed to establish that the magistrate judge clearly erred in the factual components of *his decision* denying the motion for reconsideration, they have not demonstrated reversible error in this respect.

Even if the court construes defendants' briefing to assert that the magistrate judge legally erred by failing to conclude

- 10 -

that, in order to prevent manifest injustice, defendants should be allowed to withdraw admissions that contain factual errors and it reviews this contention *de novo*, the court must reject it. Defendants failed for four months following the response deadline to move to withdraw the admissions.  They did not object to the magistrate judge's order denying their motion to withdraw or amend the deemed admissions, and they delayed seeking reconsideration for three months after the magistrate judge ruled.  Moreover, defendants' contention improperly rehashes old arguments that the merits of the case would be served by withdrawing admissions that contain factual inaccuracies. *See Wolf Designs*, 2005 WL 827079, at *1.  And although the Fifth Circuit recognizes the harsh result when a party's failure to respond to admissions "'effectively deprive[s] [it] of the opportunity to contest the merits of a case[,] [t]his result . . . is necessary to insure the orderly disposition of cases; parties to a lawsuit must comply with the rules of procedure.'"  *Carney*, 258 F.3d at 421 (quoting *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987)). Applying a *de novo* standard, the court holds that the mere presence of factual errors in the admissions do not constitute manifest injustice, and the magistrate judge did not err as a matter of law in denying defendants' motion for reconsideration.

Defendants contend in the alternative that the magistrate judge's conclusion that "withdrawal of the admissions would place

- 11 -

AMS in the untenable position of relying on the Defendants to provide discovery that [AMS] would need to prove its prima-facie case at trial" is erroneous.  They maintain that AMS would not in fact be prejudiced in its discovery by withdrawal of the admissions.  The court discerns no basis to disturb the magistrate judge's decision.  Because the magistrate judge did not commit reversible error in denying reconsideration on a sufficient independent ground, his conclusion regarding prejudice to AMS is *dicta* and need not be considered on review.

Defendants by their objections to the denial of their motion for reconsideration are essentially seeking improperly to bring an untimely appeal of the magistrate judge's initial ruling denying their motion to withdraw deemed admissions.  As the court has already noted, a motion to reconsider is "not the proper vehicle for rehashing old arguments or advancing theories of the case that could have been presented earlier."  *Wolf Designs*, 2005 WL 827079, at *1 (internal quotation marks omitted).  Defendants' objections are therefore overruled, and the magistrate judge's order denying reconsideration is affirmed.[9]

---

[9]In their reply brief, defendants maintain that the court may nevertheless review the magistrate judge's initial order for plain error.  Because they did not file timely objections to that order, the court cannot review the order for plain error or under any other standard of review.

- 12 -

III

The court turns next to defendants' motion to refuse application or in the alternative for continuance of AMS's motion for summary judgment. To demonstrate that they are entitled to relief under Rule 56(f), defendants rely on the affidavit of their attorney, M. Forest Nelson, Esquire ("Nelson"). He avers that, to oppose AMS's motion for summary judgment, defendants require additional discovery to obtain material facts related to their affirmative defenses.

A

Rule 56(f) authorizes a continuance of a nonmovant's obligation to respond to a motion for summary judgment "[s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." *Parakkavetty v. Indus Int'l, Inc.*, 2004 WL 354317, at *1 (N.D. Tex. Feb. 12, 2004) (Fitzwater, J.). "The Rule is an essential ingredient of the federal summary judgment scheme and provides a mechanism for dealing with the problem of premature summary judgment motions. The continuance authorized by Rule 56(f) is a safe harbor built into the rules so that summary judgment is not granted prematurely." *Id.* Defendants "may not rely on vague assertions that additional discovery will produce needed, but unspecified, facts, but must instead identify a genuine issue of material fact

- 13 -

that justifies the continuance pending further discovery." *Id.*
(citation omitted).   They "must demonstrate why [they] need[ ]
additional discovery and how the additional discovery will create
a genuine issue of material fact." *Id.* Defendants "must show a
genuine issue of material fact that requires postponement for
discovery, and must present specific facts explaining [their]
inability to make the substantive response required by Rule 56(e)."
*Id.* (citation omitted).

B

AMS maintains that defendants are precluded from seeking any
discovery related to their affirmative defenses or otherwise by
Fifth Circuit precedent that forecloses the admission of evidence
that controverts deemed admissions.   *See Carney*, 258 F.3d at 420
("Since Rule 36 admissions, whether express or by default, are
conclusive as to the matters admitted, they cannot be overcome at
the summary judgment stage by contradictory affidavit testimony or
other evidence in the summary judgment record."); *Dukes v. S.C.
Ins. Co.*, 770 F.2d 545, 548-49 (5th Cir. 1985) (concluding that
once motion for admission established that Dukes and Barber had
misrepresented age of tractor, no genuine issue remained as to this
fact).   The court rejects AMS's contention to the extent that it
would bar defendants from seeking discovery of material facts
related to affirmative or avoidance defenses that were not

admitted.[10]    Rule 36(b) admissions cannot admit more than is requested.  The question therefore becomes whether defendants are seeking through discovery evidence of material facts that were not admitted or to controvert facts that have been admitted.  To answer this question, the court turns to the Nelson affidavit, which sets forth the "genuine issue[s] of material fact" that he contends justify a continuance.

Having reviewed the affidavit and related pleadings, the court concludes that defendants are improperly attempting to discover facts that contravene the prima facie elements of AMS's claims. For example, Nelson alleges that the deemed admissions fail to address the following material facts related to AMS's breach of contract claim: (1) the existence of a valid, enforceable contract, (2) that AMS performed its contractual obligations, (3) that ACT breached the contract without legal excuse, and (4) that ACT's

---

[10]Generally speaking, affirmative or avoidance defenses are unrelated to the plaintiff's prima facie case.  *See Barrow v. Greenville Indep. Sch. Dist.*, 2005 U.S. Dist. LEXIS 20150, at *2 (N.D. Tex. Mar. 10, 2005) (Fitzwater, J.) (noting that avoidance or affirmative defenses include "'allegations . . . that admit the allegations of the complaint but suggest some other reason why there is no right of recovery, and . . . that concern allegations outside of the plaintiff's prima facie case that the defendant therefore cannot raise by a simple denial in the answer.'" (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1271, at 585 (3d ed. 2004)).  In this case, for example, neither ACT nor Brandert would be barred from introducing evidence of a statute of limitations defense, notwithstanding Rule 36(a) admissions that the defendant had committed the tort for which AMS is bringing suit, provided the admissions did not preclude the defendant's basis for asserting the limitations defense.

alleged breach was a proximate cause of AMS's alleged injury. Defendants have admitted, however, that they breached the Agreements, and they cannot contravene this admission by attacking the prima facie elements of the breach of contract claim. *See Carney,* 258 F.3d at 420.

Moreover, even where the materials defendants seek through Rule 56(f) discovery appear to support affirmative or avoidance defenses, i.e., evidence that would independently preclude recovery without contravening AMS's prima facie case, Nelson's affidavit relies on vague assertions that additional discovery will produce needed but unspecified facts. For example, in Texas, ratification is sometimes an affirmative defense to breach of contract. *See Vinsko v. ITT Educ. Servs., Inc.*, 2003 WL 1648173, at *4 (Tex. App. Mar. 31, 2003, pet. denied) (unpublished opinion). Nelson merely alleges that additional discovery should provide information on AMS's "ratification of defendants' alleged wrongful conduct," but he does not specify any facts that defendants seek. This assertion neither presents specific facts that explain defendants' inability to make the substantive response nor details how the additional discovery will create a genuine issue of material fact. By relying on vague assertions, defendants are improperly attempting to controvert facts that have already been admitted, and they have thus failed to meet their burden under Rule 56(f).

Accordingly, the court denies their motion to refuse

- 16 -

application or in the alternative for continuance.[11]

IV

Having resolved the preliminary questions presented by the foregoing objections and motions, the court now turns to AMS's motion for summary judgment on its claims for breach of contract, fraud, fraudulent inducement, and negligent misrepresentation and on defendants' counterclaims for breach of contract and fraud. Although Brandert filed a response to the summary judgment motion, ACT did not. ACT's failure to respond does not, of course, permit the court to enter a "default" summary judgment. *See Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.). The court is permitted, however, to accept AMS's evidence against ACT as undisputed. *Id.*[12]

---

[11]ACT has filed a separate May 23, 2005 motion for continuance and additional time to respond to AMS's motion for summary judgment. It seeks additional time to respond on the grounds that it has been denied access to witnesses, the motion for reconsideration to withdraw deemed admissions is pending before the court, and its counsel is preparing for another trial. In view of the foregoing decisions and the grounds on which the court is granting in part and denying in part AMS's motion for summary judgment, the court declines to continue its consideration of the summary judgment motion on any of these grounds and denies ACT's motion.

[12]Brandert objects to AMS's summary judgment evidence. Because the court has not in deciding AMS's summary judgment motion considered any evidence to which Brandert objects, the court overrules the objections as moot. In particular, Brandert's objections all relate to the declarations of Bruce Dean and Paul Pearson and to AMS's computation of damages, and the court has not relied on any of the evidence presented in either declaration or in AMS's damages computation.

- 17 -

A

AMS will bear the burden of proof at trial on its claims for breach of contract, fraud, fraudulent inducement, and negligent misrepresentation. Accordingly, to be entitled to summary judgment as to the claim in question, it "must establish 'beyond peradventure all of the essential elements of the claim[.]'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). AMS urges that defendants' admissions that they "breached the terms of the" Agreements and that they "committed fraud on AMS" are sufficient evidence to entitle AMS to summary judgment on those claims. Under Rule 36, however, the parties to litigation may request from their adversaries admissions regarding purely factual matters or the application of law to facts, but not conclusions of law unrelated to the facts. *See Adventis, Inc. v. Consol. Prop. Holdings, Inc.*, 124 Fed. Appx. 169, 172 (4th Cir. 2005) (unpublished opinion); *Carney*, 258 F.3d at 419; 8A Charles Alan Wright et al., *Federal Practice and Procedure* § 2255 & n.8 (3d ed. 1999); *see, e.g., English v. Cowell*, 117 F.R.D. 132, 135 (C.D. Ill. 1986) (requests improperly called for legal conclusion where defendants were asked to "admit to the existence of the statutes under which Plaintiff

brings this action").[13]   Because admissions of pure conclusions of law——for example, that "defendants committed fraud"——are improper under Rule 36, AMS may not rely on legal conclusions drawn from defendants' admissions as grounds for summary judgment.   Rule 36 does not in this respect satisfy AMS's burden.   *See* Wright et al., *supra*, § 2252, at 522 (observing "The rule is intended to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial[.]").   The admissions on file can, of course, support summary judgment provided that, in combination with other record evidence, they enable AMS to establish beyond peradventure, and without genuine and material dispute, that it is entitled to this relief.

---

[13]The court notes that "[t]he distinction between a request that permissibly seeks the admission of an issue requiring the application of the law to the facts of a case and a request that impermissibly seeks the admission of a pure issue of law is not easy to draw."   *David v. Katz*, 2000 WL 1682999, at *2 (E.D. La. Sept. 26, 2000); *see also Bender's Forms of Discovery Treatise* § 8.45(7)(d) (2005) ("Sometimes it is difficult to differentiate between improper requests that seek an admission of a question of pure law and proper requests that require the application of law to the facts of the case.").

> For example, there may not be much of a practical distinction between a request that a defendant admit that an employee acted within the course and scope of his employment (which the advisory committee note explicitly approved as being proper under Rule 36) and a request that a defendant admit that it was subject to certain statutes (which one court held was beyond the scope of Rule 36).

*David*, 2000 WL 1682999, at *2.

B

The court first considers AMS's breach of contract claim. Brandert maintains that, because he was not a party to the Agreements, and because AMS acknowledges that it did not have a contract with him, the breach of contract cause of action concerns only ACT.  AMS appears to agree with Brandert, because its reply contends only that Brandert is individually liable for fraud, fraudulent inducement, and negligent misrepresentation but fails to address breach of contract.  Moreover, in its first amended complaint, AMS alleges facts that implicate only ACT in its breach of contract claim.  Finally, AMS contends that Brandert may not maintain a counterclaim for breach of contract because he is not a party to the Agreements.  Accordingly, the court concludes that AMS's breach of contract claim pertains only to ACT.

AMS points to the deemed admissions as evidence that ACT breached the Agreements.  Request No. 34A provides that ACT breached the terms of the Agreements by issuing COIs that falsely represented that ACT was the named insured on the CNA policy. Request No. 35 requests that ACT admit that it breached the Agreements by representing to its customers that ACT was the named insured on the CNA policy.  Request No. 36 requests ACT to admit that it breached the Agreements by representing that Brandert was an authorized representative licensed to issue COIs.  These requests for admissions are authorized as mixed questions of law

and fact, *see* Rule 36(a) advisory committee's note (1970 amendment, subdivision (a)), and constitute competent summary judgment evidence that ACT breached the Agreements. *See Carney*, 258 F.3d at 419; *cf. United States v. Estate of Dickerson*, 189 F.Supp.2d 622, 625-26 (W.D. Tex. 2001) (denying summary judgment where movant improperly relied upon statement of law without including or referencing any facts of case). Moreover, AMS's evidence is undisputed, because ACT failed to file a response. *See Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) ("A summary judgment nonmovant who does not respond to the motion is relegated to her unsworn pleadings, which do not constitute summary judgment evidence."). AMS has met its burden of establishing beyond peradventure all the essential elements of its breach of contract claim, and it is entitled to summary judgment.

C

The court next considers AMS's fraud claim. AMS must demonstrate, *inter alia*, that defendants made a false representation on which AMS relied. *See, e.g., H.C. Oil & Gas Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2005 WL 265166, at *5 (N.D. Tex. Feb. 2, 2005) (Fitzwater, J.) (describing elements of fraud under Texas law, including that defendant made false representation to injured party on which party relied). AMS contends that defendants "concocted a fraud scheme to print bogus [COIs] without AMS' knowledge or acquiescence and issue them to

whomever they wanted." P. Br. 13. To support its claim, AMS addresses, *inter alia*, Request No. 41, in which it requested that defendants admit that Brandert issued COIs that misrepresented that a valid policy had been issued to ACT. The conduct of which AMS complains, however, is directed at others, i.e., the long-haul truckers and defendants' insurance broker, and not at AMS. AMS's theory is that defendants intended to act without AMS's knowledge or acquiescence. It does not contend that the truckers repeated the falsehoods to AMS, that defendants made false representations to AMS, or that AMS relied on the false representations. *Cf. Resolution Trust Corp. v. Bright*, 1993 U.S. Dist. LEXIS 21465, at *12 (N.D. Tex. Mar. 31, 1993) (Fitzwater, J.) ("A person intending to defraud another may make the representation to . . . another with the intent that it should be repeated to the intended party for the purpose of deceiving him."). AMS has thus failed to establish beyond peradventure the essential elements of its claim of fraud, i.e., that defendants made a false representation to AMS upon which it relied. *See H.C. Oil & Gas*, 2005 WL 265166, at *5.

AMS also cites Requests Nos. 81-85, which provide that defendants "committed fraud on AMS" by undertaking certain acts. Specifically, the admissions state that AMS committed fraud by usurping authority never granted under the Agreements, placing Brandert's name on the COIs, falsifying the source and sponsorship of insurance products, attempting to increase the financial burden

of AMS, and changing documents and testimony to conceal defendants' fraudulent scheme.  As the summary judgment movant, AMS is charged with informing the district court of the basis for its summary judgment motion.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Despite citing these admissions in its brief, the fraud theory that AMS articulates in its summary judgment motion is premised on defendants' representations to the long-haul truckers and to defendants' insurance broker.  AMS has failed to inform the court of any other basis on which it seeks summary judgment on its fraud claim.

AMS's motion for summary judgment on its fraud claim is denied.

D

AMS alleges an action for fraudulent inducement.  Such claims are generally available where "'the contract under which payment is made was procured by fraud.'"  *United States ex rel. Coppock v. Northrup Grumman Corp.*, 2003 WL 21730668, at *15 (N.D. Tex. July 22, 2003) (Fitzwater, J.) (quoting *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 384 (5th Cir. 2003)).  AMS points to Request No. 81 as evidence that, to induce AMS to sign the Agreements, defendants falsely represented that they would not exceed the responsibilities set forth in the Agreements.  AMS has mischaracterized the admission, however, which provides that defendants "committed fraud on AMS by usurping

- 23 -

authority never granted" under the Agreements.   The Request does not state that defendants procured the Agreements by false representations.   AMS is not entitled to summary judgment on its claim of fraudulent inducement, because it has failed to establish beyond peradventure that defendants procured the Agreements by fraud.

E

The court turns next to AMS's claim for negligent misrepresentation.   Under Texas law, to recover for negligent misrepresentation, AMS must demonstrate, *inter alia*, that it relied on false information supplied by defendants.   *See H.C. Oil & Gas*, 2005 WL 265166, at *11.   AMS contends that it relied on defendants' promise to abide by the restrictions in the Agreements, citing the identical admission (Request No. 81) that it relies on for its fraudulent inducement claim.   As the court has already explained, that admission does not provide that ACT promised to abide by the restrictions in the Agreements.   Moreover, under Texas law, negligent misrepresentation is limited to representations of existing facts, not promises of future conduct.   *See, e.g., Methodist Hosps. of Dallas v. Wal-Mart Stores, Inc.*, 2003 WL 21266775, at *8 (N.D. Tex. May 30, 2003) (Fitzwater, J.).   ACT's alleged misrepresentation is a promise of future conduct.   AMS therefore is not entitled to summary judgment on its negligent misrepresentation claim.

- 24 -

F

The court now considers the part of AMS's motion in which it seeks summary judgment dismissing defendants' counterclaims for breach of contract and fraud.

1

AMS's summary judgment burden concerning defendants' counterclaims is less onerous than the one it shouldered in moving for summary judgment as to its own claims. Because AMS will not have the burden of proof at trial as to the counterclaims, it can obtain summary judgment by pointing the court to the absence of evidence to support them. *See Celotex*, 477 U.S. at 325. If AMS does so, defendants must go beyond their pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). Summary judgment is mandatory where the nonmoving parties fail to meet this burden. *Little*, 37 F.3d at 1076.

2

Only ACT can maintain a breach of contract counterclaim because, as discussed above, Brandert is not a party to the Agreements. Concerning ACT, AMS contends that ACT cannot maintain this counterclaim because ACT admitted breaching the Agreements. *See Info. Commc'n Corp. v. Unisys Corp.*, 181 F.3d 629, 632 (5th Cir. 1999) ("'[A] party to a contract who is himself in default

cannot maintain a suit for its breach.'") (quoting *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990)).  As evidence, AMS directs the court to Requests Nos. 34A, 35, and 36, which, as the court discusses *supra* at § IV(B), establish beyond peradventure that ACT breached the Agreements.  Moreover, ACT has not designated specific facts showing there is a genuine issue for trial on this counterclaim, since it has failed to respond to AMS's summary judgment motion.  *See Bookman*, 945 F. Supp. at 1002.  Accordingly, AMS is entitled to summary judgment dismissing ACT's and Brandert's counterclaims for breach of contract.

3

AMS contends that the deemed admissions also foreclose each of AMS's allegedly fraudulent representations constituting defendants' fraud counterclaim.  Because ACT has failed to respond to AMS's motion, it has not designated specific facts showing there is a genuine issue for trial.  *See Bookman*, 945 F. Supp. at 1002.  The court thus grants AMS's summary judgment motion dismissing ACT's fraud counterclaim.

Brandert, on the other hand, has responded to AMS's motion, and he maintains that the deemed admissions do not bar his fraud counterclaim.[14]   First, Brandert alleges that AMS falsely

---

[14]Under Texas law, in order to establish a claim of fraud, Brandert must show:

(1) that a material representation was made;
(2) the representation was false; (3) when the

represented that ACT was a named insured under the CNA policy, that the insurer was National Fire, and that the policy afforded limits of $1 million of coverage.  AMS contends that Brandert's admission in Request No. 37 that ACT never had a workers' compensation policy with CNA in which it was a named insured undercuts his counterclaim.  Brandert's admission that ACT was not an insured on the policy, however, does not exclude the possibility that AMS falsely represented that ACT was a named insured.  Indeed, the fact that ACT was not insured under the policy is a necessary component of Brandert's fraud counterclaim, because Brandert must demonstrate, *inter alia*, that AMS's representation that ACT was a named insured was false.  *See H.C. Oil & Gas*, 2005 WL 265166, at *5.  Moreover, AMS's contention would require the court to infer from Request No. 37 that Brandert knew that ACT was not an insured. If Brandert had admitted such knowledge, he could not in turn maintain that he relied on AMS's alleged contrary representation, i.e., that ACT was a named insured.  But the admission provides only that ACT was not insured under the policy, not that Brandert

representation was made, the speaker knew that it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*H.C. Oil & Gas*, 2005 WL 265166, at *5.

- 27 -

knew this. Because the admission does not foreclose the possibility of a fraud counterclaim, AMS is not entitled to summary judgment on Brandert's first allegation of fraud.

Second, Brandert alleges that AMS falsely represented that the CNA policy provided "All States Coverage," with the exception of the monopolistic states. AMS maintains that, because defendants admitted in Request No. 37 that they were not named insureds, "the Defendants conclusively prove there was no coverage provided after May 31, 2002 and therefore no misrepresentation occurred." P. Br. 23. The court disagrees. Brandert's admission that ACT was not an insured on the policy does not foreclose the possibility that AMS falsely represented the extent of the policy's coverage. Rather, the fact that ACT was not insured may lend support to Brandert's contention that AMS's alleged representations with respect to coverage were false. Accordingly, the court declines to grant summary judgment to AMS on Brandert's second allegation of fraud.

Third, Brandert alleges that AMS falsely represented that it had authority to give ACT the authority to issue COIs to the long-haul truck drivers. AMS contends that Requests Nos. 24, 29, 39, and 81 preclude Brandert from establishing this basis for his fraud counterclaim. In these Requests, Brandert admitted that the Agreements did not allow ACT to issue COIs, ACT fraudulently represented to its clients that it had authority to issue COIs, and defendants defrauded AMS by usurping authority never granted under

the Agreements by using AMS's workers' compensation policy as if it were ACT's own. Because defendants have admitted that ACT *fraudulently* represented that it possessed authority to issue COIs, they are charged with knowing that ACT lacked such authority. *See H.C. Oil & Gas*, 2005 WL 265166, at *5 (identifying elements of fraud under Texas law, including that when representation was made, speaker knew that it was false).[15] For his fraud counterclaim, Brandert must adduce evidence that he relied on AMS's representation that ACT possessed authority to issue COIs. *See id.* Because it is inconsistent that he relied on information that he knew to be false, the admission forecloses his allegation that AMS fraudulently represented that it possessed authority to authorize ACT to issue COIs. Accordingly, AMS is entitled to summary judgment dismissing Brandert's third ground of his fraud counterclaim.

Fourth, Brandert alleges that AMS falsely represented to ACT that CNA decided to cancel the workers' compensation program, the

---

[15]Although the admission provides only that ACT made fraudulent representations to clients that it had authority to issue COIs, the summary judgment evidence does not permit the inference that Brandert is sufficiently distinct from ACT that he had no knowledge of ACT's lack of COI-issuing authority. Brandert submitted his deposition, taken in other litigation, as summary judgment evidence. In it he explained that ACT was operated out of his home and the two officers were his sons, he traveled to Dallas to meet with AMS and negotiated with it, he provided clients with an administrative packet with a sample COI, and he prepared the COIs. The court thus concludes that Brandert possessed the requisite knowledge of ACT's lack of authority to issue COIs.

cancellation notice was effective July 31, 2002, AMS was canceling its Agreements with ACT based on CNA's action, and the letter served as 60-day notice of the cancellation.  AMS maintains that Request No. 59, in which Brandert admitted that the Agreements were terminated on May 31, 2002 for nonpayment, precludes his allegations that AMS falsely represented various cancellation-related issues in June and July 2002 or that the Agreements were terminated other than for nonpayment.  Brandert counters that AMS's correspondence in June and July 2002 demonstrates that the Agreements were not in fact terminated on May 31, 2002.  The admission is conclusive as to the date and the reason the Agreements were terminated, however, and the court may not accept contradictory evidence in the summary judgment record. *See Carney*, 258 F.3d at 420.  By failing to offer permissible summary judgment evidence on this issue, Brandert has not satisfied his summary judgment burden.  The court thus concludes that AMS is entitled to summary judgment dismissing the fourth ground for Brandert's fraud counterclaim.

V

Defendants move for leave to amend their pleadings.  The court denies the motion without prejudice.

"This court will 'carefully scrutinize a party's attempt to raise new theories of recovery by amendment when the opposing party has filed a motion for summary judgment.'"  *Barrow v. Greenville*

*Indep. Sch. Dist.*, 2001 U.S. Dist. LEXIS 20120, at *3 (N.D. Tex. Dec. 4, 2001) (Fitzwater, J.) (quoting *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999) (per curiam)).  In determining whether to grant leave to amend, "the court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc[.]"  *Id.* (internal quotation marks omitted) (alteration in original).  The court concludes that it would unduly prejudice AMS if the court were to allow defendants to amend nearly four months after AMS filed its summary judgment motion.  *See Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1150-51 (5th Cir. 1990) (holding that "'[t]o grant . . . leave to amend is potentially to undermine [a party's] right to prevail on a motion that necessarily was prepared without reference to an unanticipated amended complaint. . . .  A party should not, without adequate grounds, be permitted to avoid summary judgment by the expedient of amending its complaint.'") (quoting this court's opinion below).  The motion is therefore denied without prejudice.

*             *             *

For the reasons set out, defendants' July 11, 2005 written objections to the magistrate judge's order denying motion to reconsider order on motion to withdraw deemed admissions are

overruled, and the magistrate judge's order is affirmed; defendants' May 19, 2005 motion to refuse application or in the alternative for continuance of motion for summary judgment is denied; ACT's May 23, 2005 motion for continuance and additional time to respond to AMS's motion for summary judgment is denied; AMS's May 4, 2005 motion for summary judgment is granted in part and denied in part; and defendants' September 1, 2005 motion for leave to amend pleadings is denied without prejudice.

**SO ORDERED.**

November 21, 2005.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 32 -