IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMS STAFF LEASING, NA, LTD., | § | |
| | § | |
| Plaintiff-counterdefendant, | § | |
| | § | |
| VS. | § | |
| | § | |
| ASSOCIATED CONTRACT | § | |
| TRUCKMEN, INC., et al., | § | |
| | § | |
| Defendants- | § | Civil Action No. 3:04-CV-1344-D |
| counterplaintiffs- | § | |
| third-party plaintiffs, | § | |
| | § | |
| VS. | § | |
| | § | |
| PACESETTER NATIONAL | § | |
| CORPORATION d/b/a PACESETTER | § | |
| ADJUSTMENT COMPANY, | § | |
| | § | |
| Third-party defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Defendants Associated Contract Truckmen, Inc. ("ACT") and

Dave Brandert ("Brandert") move for partial summary judgment as to

plaintiff AMS Staff Leasing, NA's ("AMS's") remaining tort claims

for fraud, fraudulent inducement, and negligent misrepresentation.[1]

---

[1]They also move to strike or exclude the expert testimony of
Charles D. Wood ("Wood"), President, Chairman of the Board, and
owner of AMS.  AMS seeks to offer Wood's expert testimony on the
authority of ACT and Brandert under the Agreements, the termination
of the Agreements, AMS's role as a professional employer
organization, and the damages AMS suffered.  The court denies the
motion without prejudice to its being renewed if, after the court's
decision today and its later ruling on AMS's second motion for
summary judgment, there are issues to be tried that will involve
his expert testimony.  The court suggests no view concerning
whether it will later allow his expert testimony on any particular
issue.

AMS moves for leave to file a second motion for summary judgment and for leave to file a second amended complaint.  For the reasons that follow, the court grants defendants' motion for partial summary judgment, grants in part and denies in part as moot AMS's motion for leave to file a second summary judgment motion, and denies AMS's motion for leave to file a second amended complaint.

I

This lawsuit is the subject of a prior memorandum opinion and order of the court.  *See AMS Staff Leasing, NA v. Associated Contract Truckmen, Inc.*, 2005 WL 3148284 (N.D. Tex. Nov. 21, 2005) (Fitzwater, J.) ("*AMS I*").  The court adopts the recitation of facts and procedural history set forth in that opinion, and it assumes the parties' familiarity with the rulings.[2]

In *AMS I* the court granted AMS's motion for summary judgment as to AMS's breach of contract claim against ACT,[3] ACT's and Brandert's breach of contract counterclaims, ACT's fraud counterclaim, and two of four grounds for Brandert's fraud counterclaim.  *See id.* at *7, *9-*10.  The court denied AMS's

---

[2]*AMS I* recounted the evidence in a light favorable to ACT and Brandert as the summary judgment nonmovants and drew all reasonable inferences in their favor.  *See AMS I*, 2005 WL 3148284, at *1 n.5 (citing *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000)).  AMS, of course, is the nonmovant with respect to ACT and Brandert's motion for partial summary judgment, and the court must therefore view the facts and draw all reasonable inferences in AMS's favor. *See, e.g., Clift*, 210 F.3d at 270.

[3]The court held that AMS did not bring a breach of contract action against Brandert.  *See AMS I*, 2005 WL 3148284, at *6.

motion as to its claims against ACT and Brandert for fraud, fraudulent inducement, and negligent misrepresentation, and it denied summary judgment as to two of four grounds for Brandert's fraud counterclaim. *Id.* at \*8-\*10. ACT and Brandert now move for partial summary judgment dismissing AMS's remaining claims, contending that AMS has failed to discharge its summary judgment burden. AMS moves for leave to file a second summary judgment motion to address its fraud claim and Brandert's two remaining grounds of his fraud counterclaim, and it moves for leave to amend to add an alternative claim for negligence.[4]

## II

The court turns first to ACT and Brandert's motion for partial summary judgment.

## A

Because ACT and Brandert will not have the burden at trial as to AMS's claims, they can obtain summary judgment by pointing the court to the absence of evidence to support them. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). ACT and Brandert have done this in their motion, pointing to the absence of evidence of each element of a fraud, fraudulent inducement, and negligent misrepresentation claim. AMS must therefore go beyond its pleadings and designate specific facts showing there is a genuine

---

[4]The third-party action of ACT and Brandert against Pacesetter National Corporation d/b/a Pacesetter Adjustment Company was dismissed on December 14, 2005.

issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37
F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  Summary
judgment is mandatory if it fails to meet this burden.  *Little*, 37
F.3d at 1076.

B

AMS contends that ACT and Brandert committed fraud when, in
issuing false certificates of insurance ("COIs") to long-haul
truckers, they intended for the truckers to repeat to AMS, and the
truckers in fact repeated, the false information contained therein
for the purpose of collecting workers' compensation benefits in the
event of a claim.

To establish a claim for fraud under Texas law, AMS must
proffer evidence that defendants:

> (1) made a material representation, (2) that
> was false when made, (3) [they] knew the
> representation was false, or made it
> recklessly without knowledge of its truth and
> as a positive assertion, (4) [they] made the
> representation with the intent that [AMS]
> should act upon it, and (5) [AMS] acted in
> reliance upon it and suffered injury as a
> result.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313
F.3d 305, 322 (5th Cir. 2002) (Fitzwater, J.) (citing *Beijing
Metals & Minerals Imp./Exp. Corp. v. Am. Bus. Ctr. Inc.*, 993 F.2d
1178, 1185 (5th Cir. 1993) (applying Texas law)).  Both sides
recognize that AMS must demonstrate that ACT and Brandert made a
false representation on which AMS relied.

AMS alleges that ACT and Brandert issued false COIs indicating that National Fire Insurance Company of Hartford ("National Fire"), a wholly owned subsidiary of Continental Casualty Company ("CNA"), had issued to ACT a workers' compensation insurance policy.  AMS maintains that the policy had in fact been issued only to AMS.  It contends that each time ACT and Brandert issued a COI to a trucker, they made various misrepresentations.  AMS points, *inter alia*, to defendants' deemed admissions.  As the court explained in *AMS I*, however, issuance of the false COIs did not alone constitute fraud, because the conduct was directed at others——the long-haul truckers and defendants' insurance broker——not at AMS.  *See AMS I*, 2005 WL 3148284, at *7.    AMS therefore contends that ACT and Brandert intended the truckers to repeat the false information to AMS for the purpose of obtaining workers' compensation benefits.  Both parties acknowledge that AMS may properly demonstrate a fraud claim by an indirect representation.  That is, "[a] person intending to defraud another may make the representation to . . . another with the intent that it should be repeated to the intended party for the purpose of deceiving him."  *RTC v. Bright*, 1993 U.S. Dist. LEXIS 21465, at *12 (N.D. Tex. Mar. 31, 1993)(Fitzwater, J.)*; see also Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 578-79 (Tex. 2001).

The dispositive question in this case, however, is whether AMS has designated specific facts that would permit a reasonable trier

of fact to find (1) that ACT and Brandert intended for AMS to rely upon the false COIs and/or the false information contained therein and (2) that AMS relied on the false COIs and/or the false information contained therein.  AMS points to Brandert's deposition testimony, in which he acknowledged that he "intended" for a particular trucker to present a COI to AMS "to get the coverage that [Brandert] promised that [the trucker] would have."  P. Br. 14 (citing App. 46).  AMS has therefore designated evidence that would permit a reasonable trier of fact to find that ACT and Brandert intended for truckers to furnish COIs to AMS and thereby to repeat the false information.

AMS has failed, however, to identify specific facts from which a reasonable trier of fact could find that AMS relied on the false COIs and/or the false information contained therein.  *See Admiral Ins. Co. v. Heath Holdings USA, Inc.*, 2004 WL 1144062, at *5 n.5 (N.D. Tex. May 21, 2004) (Fish, C.J.) ("[A] misrepresentation may arrive *indirectly* through an intermediary; however, reliance *directly* upon that misrepresentation is required."); *see also Ernst & Young*, 51 S.W.3d at 577 (requiring reliance on alleged misrepresentation, which reliance induced action or inaction on plaintiff's part and caused pecuniary loss).  In fact, AMS's theory of the case is mutually inconsistent with the concept that it was defrauded.  AMS does not assert that it relied on COIS or false information in them.  Charles D. Wood ("Wood"), the President, CEO,

and owner of AMS, testified that the COIs were "not of any consequence" in paying workers' compensation claims.  D. App. 649 ("If you had your payments in and a list of employers covered, you're taken care of.  Whether a [COI] was issued to them, it doesn't make any difference anyway.").  Instead, AMS knew the COIs contained false information.  What AMS complains about is that truckers relied on the COIs to obtain benefits under the policy, which in turn exposed AMS to liability under the terms of the contract with CNA.

In sum, AMS maintains that the COIs were fraudulently issued, contained false information, were intended to be presented to AMS, and exposed AMS to liability.  This does not describe a fraud claim against AMS because, at a minimum, there is no basis to find reliance by AMS.  At most, AMS is asserting a claim based on conduct that defrauded the truckers and that, as a consequence, financially impacted AMS.  The court therefore grants summary judgment in defendants' favor on AMS's fraud claim.

C

AMS next contends that ACT and Brandert fraudulently induced AMS to enter into a staff leasing agreement with ACT in December 2000, which was renewed in December 2001.  It maintains that ACT and Brandert never intended to purchase staff leasing services from AMS and were instead merely looking for a source of workers' compensation coverage for the truckers.  AMS alleges that, to

- 7 -

obtain the benefit from AMS of workers' compensation coverage for the co-employees, ACT was required under the terms of the Agreements[5] to prepare the truckers' federal tax forms, to prepare, withhold, and pay their federal income tax, to prepare Internal Revenue Service ("IRS") employer tax withholding forms, and to prepare their state and federal unemployment insurance reports.[6] Instead, according to AMS, ACT and Brandert never intended to fulfill this obligation.

To establish a claim for fraudulent inducement under Texas law, AMS must generally show that the Agreements were "'procured by fraud'" and must demonstrate each element of fraud, as discussed *supra* at § II(B). *See United States ex rel. Coppock v. Northrup Grumman Corp.*, 2003 WL 21730668, at *15 (N.D. Tex. July 22, 2003) (Fitzwater, J.) (quoting *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 384 (5th Cir. 2003)). A claim of fraudulent inducement requires proof of a false

---

[5]As do the parties, the court will refer to the two staff leasing agreements of 2000 and 2001 collectively as the "Agreements."

[6]The Agreements actually provide that AMS "agrees to provide [ACT] payroll and related functions to [the truckers]." P. App. 69. The related functions include, *inter alia*, "consulting assistance regarding preparing withholding and payment of all required federal income and related taxes" and "consulting assistance in preparing and filing of all required State and Federal Unemployment Insurance Reports." *Id.* With respect to IRS and Immigration and Naturalization Service forms, however, "it is expressly agreed and understood that [ACT] will obtain, prepare and file the required documents." *Id.*

representation.  *See Prokopeas v. Rapp Collins World Wide, Inc.*,
2004 WL 2296827, at *3 (N.D. Tex. Oct. 13, 2004) (Fitzwater, J.).
A promise of future performance is "actionable fraud if
representations are made with the 'intent to deceive and with no
intention of performing as represented.'" *Coffel v. Stryker Corp.*,
284 F.3d 625, 633-34 (5th Cir. 2002) (quoting *Formosa Plastics
Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48
(Tex. 1998)).

AMS has failed to introduce evidence that would permit a
reasonable trier of fact to find in its favor on the first element
of its fraudulent inducement claim, i.e., that ACT or Brandert made
a false, material representation to AMS.  AMS cites the proposition
that "[a] promise to perform in the future is fraudulent if the
promise is made with the intent to deceive and with no intention of
performing as promised."  P. Br. 17 (citing cases).  Although this
is a correct statement of the law, AMS does not identify any
promises that ACT or Brandert made before entering into the
Agreements.   In fact, AMS does not point the court to any
statements that ACT or Brandert made before the Agreements were
signed.  *Cf. Coffel*, 284 F.3d at 632-33 (affirming jury finding of,
*inter alia*, fraudulent inducement where employer made three
affirmative representations regarding potential compensation before
parties entered into agreement); *Formosa Plastics*, 960 S.W.2d at
48-49 (concluding contractor had legally viable fraudulent

inducement claim where project owner stated, *inter alia*, in bid package that contractors would have ability to schedule delivery of concrete to induce contractors to submit low bid and enter into construction agreement).

Moreover, AMS does not contend that ACT or Brandert committed fraud by concealing a material fact.  It does not refer in its brief to fraud by concealment (silence, omission, or nondisclosure), cite cases that concern fraud by concealment, or contend that ACT or Brandert had a duty of disclosure.  *See Jones Partners Const., LLC v. Apopka Plaza Assocs.*, 2006 WL 784892, at *4 (N.D. Tex. Mar. 27, 2006) (Fitzwater, J.) (holding that "failure to disclose a material fact is fraudulent only if the defendant has a duty to disclose") (citing *Cadle Co. v. Wilson*, 136 S.W.3d 345, 354 (Tex. App. 2004, no pet.)).  AMS cites no facts in support of a duty of disclosure, e.g., facts relevant to a fiduciary or confidential relationship or to partial or voluntary disclosures made by ACT or Brandert.  *Id.* (observing that "question whether a duty to disclose even exists in Texas absent a confidential or fiduciary relationship is debatable") (citing *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 566 (5th Cir. 2005)).  Thus AMS has not designated specific facts that show there is a genuine issue for trial on a theory of fraudulent concealment.

AMS alleges only that ACT and Brandert entered into the

Agreements never intending to perform certain aspects of them, and it points to deposition testimony by Brandert to that effect. Intent, however, is only one aspect of ACT's fraudulent inducement claim and is alone insufficient to withstand summary judgment.

Essentially, AMS's fraudulent inducement cause of action can be reduced to a claim that ACT entered into the Agreements with no intent to perform them. If this were sufficient of itself to prove fraudulent inducement, breach of contract claims could routinely be transformed under Texas law into tort claims. One party could often be able at least to point to circumstantial evidence that the opposing party did not intend to perform the contract as promised. Texas law avoids this possibility by requiring the claimant to demonstrate intent to deceive through proof of a misrepresentation or omission of a fact that the party had a duty to disclose. *See Formosa Plastics*, 960 S.W.2d at 48 (requiring intent to deceive). The claimant cannot, as AMS has effectively done here, merely assert that the opposing party entered into the contract with the intent not to perform it.

Accordingly, the court concludes that AMS has failed to designate specific facts in support of a material misrepresentation or promise. The court grants defendants' motion for summary judgment on AMS's fraudulent inducement claim.

D

Defendants move for summary judgment as to AMS's claim for negligent misrepresentation.  AMS does not seek to hold ACT liable on this claim.[7]  It contends that Brandert made two actionable negligent misrepresentations, both of which are predicated on theories of the evidence that the court has already discussed. First, Brandert made "negligent misrepresentations to the truckers" by issuing the false COIs, expecting they would be repeated to AMS. P. Br. 20.  Second, he "negligently misrepresented ACT would enter into [the Agreements] with AMS when ACT only wanted to sell workers' compensation insurance."  *Id.* at 20.  AMS proffers "the same evidence that supports" its fraud and fraudulent inducement claim in support of its negligent misrepresentation claim.  *Id.* at 22.

To establish a cause of action for negligent misrepresentation, AMS must demonstrate that

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

---

[7]In its response brief, AMS acknowledges that its negligent misrepresentation claim is precluded against ACT.  *See* P. Br. 2 n.3.  The court therefore dismisses with prejudice AMS's negligent misrepresentation claim against ACT.

*C.E. Barker, Inc. v. Firstcapital Bank*, 2005 WL 1177910, at *4 (Tex. App. May 19, 2005, pet. denied) (unpublished opinion) (citing *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).  "[T]he sort of 'false information' contemplated in a negligent-misrepresentation case is a statement of *existing fact*, not a promise of future conduct."  *New York Life Ins. Co. v. Miller*, 114 S.W.3d 114, 124 (Tex. App. 2003, no pet.).

1

AMS first contends that Brandert committed negligent misrepresentation by issuing false COIs that listed ACT as the named insured and expecting that truckers "would repeat the misrepresentations on [them] to AMS."  P. Br. 20.  As the court concludes *supra* at § II(B), however, AMS has failed to identify specific facts from which a reasonable trier of fact could find that AMS relied on the false COIs and/or the false information contained therein.  Accordingly, the court grants summary judgment in favor of Brandert as to this claim.  *See Admiral Ins.,* 2004 WL 1144062, at *7-*8 (holding that plaintiff failed to state claim for negligent misrepresentation where, as with its fraud claim, it failed to provide factual allegations showing justifiable reliance).

2

AMS contends that Brandert misrepresented an existing fact when he signed the Agreements, "even though he never intended to

perform any of the contractual requirements."   P. Br. 22.
Notwithstanding that Brandert himself was not a party to the
agreements, AMS seeks to bring a negligent misrepresentation claim
against Brandert premised on ACT's breach of contract.  Negligent
misrepresentation is "a cause of action recognized in lieu of a
breach of contract claim, not usually available where a contract
was actually in force between the parties." *Airborne Freight Corp.
v. C.R. Lee Enters., Inc.*, 847 S.W.2d 289, 295 (Tex. App. 1992,
writ denied).

     AMS relies on *Schauer v. Cargill, Inc.*, 2003 WL 21372163, at
*7 (W.D. Tex. June 12, 2003), for the proposition that negligent
misrepresentation claims are proper if the evidence shows that the
defendant never intended to perform a contract.  In *Schauer* the
magistrate judge recommended remanding the case, finding a
"possibility of recovery" against individual defendants who made
alleged misrepresentations about their intent "to have long lasting
business relationships." *Id.*  Although this court is somewhat
skeptical that such comments can amount to representations of
existing facts, AMS points to no similar affirmative
representations that Brandert made, e.g., about the length of the
AMS-ACT relationship.  Indeed, AMS does not assert that Brandert
made any statements, representations, or acknowledgments prior to
entering the Agreements. *See Guardian Underwriters Reassurance
Ltd. v. Thompson*, 2004 U.S. Dist. LEXIS 862, at *11 (N.D. Tex. Jan.

- 14 -

26, 2004) (Sanders, J.) ("For a negligent misrepresentation cause of action to lie in Texas, the defendant must make affirmative misrepresentations.") (citing *Sergeant Oil & Gas Co., Inc. v. Nat'l Maint. & Repair, Inc.*, 861 F. Supp. 1351, 1360 (S.D. Tex. 1994)). Rather, AMS maintains that, by signing the Agreements, Brandert represented an existing fact——that he was entering into the staff leasing arrangement with AMS.  But Brandert's signing of the Agreements can only be characterized as a promise to perform in the future under their terms, which is not an actionable negligent misrepresentation.  *See New York Life Ins.*, 114 S.W.3d at 124 (holding that promises of future conduct cannot constitute negligent misrepresentations).

Accordingly, the court concludes that AMS has failed to designate specific facts that show there is a genuine issue of material fact that Brandert made negligent misrepresentations, and it grants defendants' summary judgment motion with respect to AMS's negligent misrepresentation claim.

E

In sum, as a result of the court's rulings in *AMS I* and today, all of AMS's claims against Brandert are dismissed with prejudice, and all of AMS's tort claims against ACT are dismissed. Additionally, two grounds of Brandert's fraud counterclaim remain, but all other components of the fraud counterclaim, ACT's fraud counterclaim, and ACT and Brandert's breach of contract

counterclaim, are dismissed with prejudice.

                                III

     AMS seeks leave to file a second summary judgment motion.  *See*
N.D. Tex. Civ. R. 56.2(b) ("Unless otherwise directed by the
presiding judge, or permitted by law, a party may file no more than
one motion for summary judgment.").  Because the court in *AMS I*
granted summary judgment in AMS's favor on its breach of contract
claim and has today granted summary judgment in defendants' favor
as to AMS's remaining claims, the court denies as moot AMS's motion
for leave to file a second summary judgment motion on its claim for
fraud and Brandert's affirmative defenses.

     As noted, apart from AMS's breach of contract claim, the only
remaining claim consists of two components of Brandert's fraud
counterclaim.  In these circumstances, the court concludes that it
is more efficient, potentially less costly to the parties, and
possibly less burdensome to the court and to jurors to determine
whether the remainder of Brandert's fraud counterclaim can be
resolved by summary judgment before trying it.  Accordingly, the
court grants AMS's motion for leave to file a second motion for
summary judgment to the extent that, within 30 days of the date
this memorandum opinion and order is filed, it may file a motion
for summary judgment addressed to the two remaining grounds of
Brandert's fraud counterclaim.

IV

AMS filed on April 20, 2006 a motion for leave to file a second amended complaint, in which it seeks to add an alternative claim for negligence.  It filed this motion almost two years after it commenced this case in state court, over three months after ACT and Brandert had filed a motion for partial summary judgment (and after briefing on that motion was completed), and on the eve of this court's decision dismissing all of AMS's claims against Brandert and all tort claims against ACT.  This court can deny a motion for leave to amend that is dilatory and that is filed after a summary judgment motion has been filed.  It therefore denies AMS's motion.

First, the court finds that AMS has been dilatory in seeking leave to amend.  AMS asserts, *inter alia*, that leave should be granted in order to "trap insurance proceeds" available to Brandert.  P. Br. 8.  It alleges that it did not obtain a copy of Brandert's errors and omissions policy issued by Utica Mutual Insurance Company ("Utica") until it was mailed on September 1, 2005.  *Id.* at 1-2 n.2.  AMS represents that this policy contains a fraud exclusion.  *Id.* at 4.  Whether Brandert's actions fall within the coverage afforded him under the Utica policy is immaterial, however, to this court's determination of whether to grant leave to amend.  Moreover, AMS has represented that the coverage question is the subject of a separate lawsuit in another jurisdiction.  *See*

- 17 -

*Utica Mutual Ins. Co. v. Associated Contract Truckmen, Inc.*, No.
5:05cv1087 (W.D. Okla.).  AMS's new negligence theory is premised

on the same facts that underlie the tort and contract claims it

asserts in its first amended complaint.  *See* P. Br. 6-7.  And it

was aware of these facts at least over 18 months ago.

Second, even if the motion were not dilatory, the court

declines to allow AMS to amend after defendants have moved for

partial summary judgment and on the eve of this court's decision on

the motion.  As the court explained in *AMS I*, in which the court

denied without prejudice defendants' motion to amend:

> This court will carefully scrutinize a party's
> attempt to raise new theories of recovery by
> amendment when the opposing party has filed a
> motion for summary judgment.  In determining
> whether to grant leave to amend, the court may
> consider such factors as undue delay . . . .
> The court concludes that it would unduly
> prejudice AMS if the court were to allow
> defendants to amend nearly four months after
> AMS filed its summary judgment motion.  To
> grant . . . leave to amend is potentially to
> undermine a party's right to prevail on a
> motion that necessarily was prepared without
> reference to an unanticipated amended
> complaint. . . .  A party should not, without
> adequate grounds, be permitted to avoid
> summary judgment by the expedient of amending
> its complaint.

*AMS I*, 2005 WL 3148284, at *11 (citations, internal brackets, and

internal quotation marks omitted) (some ellipsis in original).  The

court in its discretion concludes that AMS's motion should be

denied on the grounds that it is dilatory and was filed after

defendants had filed a motion for partial summary and on the eve of

- 18 -

this court's ruling dismissing all claims against Brandert and all tort claims against ACT.  Moreover, basic considerations of fairness and equal treatment require that the court apply to AMS's motion for leave under the same standards and reasoning that it applied in denying defendants' motion.

V

Regardless whether the court later dismisses by summary judgment the remaining two components of Brandert's fraud counterclaim, it must decide whether the remedial portion of AMS's breach of contract claim[8] remains to be tried and, if so, what is the estimated length of trial.  Accordingly, within 20 days of the date this memorandum opinion and order is filed, the parties must submit a joint status report that states their joint position (or respective positions) concerning what remains to be tried of AMS's breach of contract claim against ACT and how long they estimate the trial, if necessary, of the claim will take.

*     *     *

For the reasons set out, the court grants the January 3, 2006 motion for partial summary judgment of defendants ACT and Brandert, grants in part and denies in part as moot AMS's January 5, 2006 motion for leave to file a second motion for summary judgment, and

---

[8]By "remedial portion" the court means any request for relief other than attorney's fees, which are usually decided by the court on written submissions filed after judgment, under Fed. R. Civ. P. 54(d).

denies AMS's April 20, 2006 motion for leave to file a second amended complaint. The December 30, 2005 motion of ACT and Brandert to strike or exclude the expert testimony of Wood is denied without prejudice.

**SO ORDERED.**

April 26, 2006.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE